May it please the Court, Assembly Member Margarita Mercado Echegaray, on behalf of the Commonwealth of Puerto Rico and the Secretary of the Treasury of the Commonwealth of Puerto Rico, I will be addressing the jurisdiction arguments raised in our appeal, and Co-Counsel Susan Seabrook will address the tax-specific matters that are concerned in this case. This appeal concerns an unprecedented ruling by the District Court in which it enjoined the assessment and collection of a Commonwealth of Puerto Rico income tax before first requiring that the taxpayer show that it is subject to the tax. There are two clear jurisdictional hurdles in this case. The first one concerns Article 3 of the Constitution's standing. Walmart has not shown that it is subject to the tax. Therefore, it cannot ask the Federal Court to enjoin the Commonwealth income tax. Secondly, as we are doing our brief, the Butler Act, the Tax Injunction Act, and committee principles should have led the Court to dismiss the case, to decline, to interfere with the Commonwealth's ability to implement its tax policies concerning income tax. Can we go back to your first point, where you say that Walmart hasn't shown that the tax is applicable to it. Has Walmart now filed a return? No, Your Honor. Upon the filing of the complaint, and even as we stand here today, even as they haven't filed the tax returns, they asked for an extension. So, therefore, at this point in time, they have asked for an extension, and has any action been taken on that? No, I don't know the status of the decision on the extension. But it's your clients who are making that decision, correct? Yes, but the operative question in this case, Your Honor, if I may. No, you may not. I have my own questions for you. And believe me, we know the arguments that you're making. As I understand it, no request for refund is due until they have filed a return. Yes, that's correct. And it is the case that they have been filing estimated taxes on the assumption that this tax does apply to them. They have been filing estimated taxes. And the Commonwealth has accepted that. Yes, that's correct, Your Honor. But as a legal matter, that doesn't show that they are subject to the tax as this income tax works. It's a parallel calculation. One other thing. The district court made a finding that the parties had agreed that Walmart would not, in the end, get a refund from the department of the estimated taxes that it had been paid. Is that clear error? It's in the opening lines of the opinion. I saw nothing with you attacking that as clear error. I believe that what that means is that the refund, the taxpayer is entitled to a refund at the end of the tax year when the final tax liability is established. In that point in time is when it could be determined whether there is a right to a refund. The opinion says, are you saying the district court simply misunderstood and that you have taken no position whatsoever about whether they are entitled to a refund at the end of the period? That's correct. It cannot be determined at this point if they are entitled to a refund because it cannot be determined whether they will be subject to the alternative minimum income tax during the operative tax year because that will be determined when it is shown that the alternate minimum income tax exceeds their regular tax liability to the extent that at the end of the year Walmart pays enough regular income tax. They won't be subjected to payment of the AMT. Therefore, at this point in time, it's still speculative to hold that they are subject to the AMT that they seek to challenge and that is why it's premature to weigh a challenge in federal court. I can understand that point of view, although it's a little hard to understand given that you're now holding their money. At the other end of the process, let me ask, the Commonwealth has imposed remedial restrictions on any payment due to the Commonwealth. If this case gets to the Puerto Rican Supreme Court, does that court have the ability to set aside those restrictions? You're referring to the law 66, which I should clarify that that law only applies to payment of judgments. Therefore, if Walmart is entitled to a reimbursement, that law wouldn't apply, that restriction wouldn't apply, and that is why it is improper to take that into account for the jurisdictional question in this case because they have not shown that they are entitled to a refund. It may be material to the second part of your argument and I'm not getting an answer to the question. Is it within the power of the Supreme Court of Puerto Rico to set aside these special rules that would preclude a payment of more than, how many million is it? It's three million. As of today, the law has withstood scrutiny, so therefore it applies not only to payment of judicial judgments. So it would be for Walmart to litigate in state court whether it should be relieved of any of the restrictions, payment restrictions of the law 66, but that is not applicable. Lower court, not Puerto Rico Supreme Court, a judgment on law 66. Can you be more precise on exactly what you say the $3 million cap applies to? I understand it applies to judgments. Judicial judgments. Are you saying that it does not apply to a, for example, credit taken on a tax return? It does not apply to a credit or to a refund unless the refund is litigated in state court. But if Walmart were to request eventually a refund for the 2015 tax year and granted it by the Department of the Treasury, it wouldn't be subject to law 66. But if the Treasury Department and the Commonwealth maintain that there's nothing unconstitutional about the tax and therefore Walmart is not entitled to get it back and Walmart then goes to court in Commonwealth court and prevails on a constitutional challenge to the court, that would then take the form of a judgment, would it not? A judgment, yeah. And in that case it would apply. And then under Puerto Rican law, they would only be entitled to recover a maximum of $3 million per year. Yes, yes, that's correct. Is that it? Yes. If we look at that aspect of the remedy, do you claim that for a taxpayer who has a possible claim of eight or nine figures judgment that that's a proper remedy? Well, we believe that that is a dispositive because as this court has held, the adequate remedies, it's a chance to litigate in state court your federal claim. And Walmart has that available under Puerto Rican law. Would you say that we should find that's a plain speedy and efficient remedy? I'm not sure I heard an answer to my question. Are you saying that, yes, if someone had a $100,000 claim, then a $1 a year remedy would not be a fair remedy. But if they had a $0.50 claim, then there'd be no problem with the fairness of the remedy. And what we don't yet know here is whether Walmart has a little claim in relation to $3 million or a big claim in relation to $3 million. That is part of my answer, correct? And also, I would take issue with what would be the guidelines, the rule that this court would apply in different cases weighing the amount of a refund or a right that you have to claim for the government versus the limit that the state law applies. I would think it would be an unworkable rule just looking at the amount of the judgment and a limit on payments. And also, I would like to say that Los Existentes is a valid statute, an emergency statute. Are you saying it is immaterial to the question? It's not even relevant? It is irrelevant. You agree it's relevant? It is irrelevant. It's not? It is not for the jurisdictional question. All right. Particularly on the facts of this case in which it's based on speculation as to whether Walmart Puerto Rico has a right to recover a money judgment from Puerto Rico. Judge Thompson was… Are you saying that the Supreme Court of Puerto Rico does not have the authority in the event that the cap applies to declare that act unconstitutional? What I meant to say is that the law has been upheld in lower courts in Puerto Rico. The litigants have tried to take issue with the cap, and it has been sustained. The Supreme Court of Puerto Rico has not addressed it. In constitutional cases where there is an argument that the imposition of the $3 million cap is unconstitutional? On constitutional basis, yes. And what is that lower court decision? Has it been submitted to the federal court in translation? I don't believe it. They are putting a record in this case. I have one more question on the jurisdictional issue. The case that Walmart is relying on, I believe it's the Ninth Circuit decision, Adams County. They stress in their brief, and you make no mention of in your reply brief, why should we distinguish or not follow that decision? The Adams case precedes the long line of cases from the Supreme Court of the United States and from this court applying comedy principles as jurisdictional bars in cases such as this. It comes after the Anti-Injunction Act. Yes, but it's a 1940 case, so it's an old decision that doesn't take into account how the doctrine and interpretation of this package has developed. Counsel, the case you're relying on, an oral argument, the lower court decision, we ask that you provide your fellow counsel and us within 30 days an English translation of that opinion. I should clarify that there have been many cases in which litigants were not in the tax context. It has been other cases. Okay, thank you. That's helpful. But you have nonetheless relied on it, and we would like a copy of that opinion. No problem. In the non-tax context, but involving constitutional claims, that's what we're trying to figure out, the extent to which the lower court has addressed the ability of higher courts to declare something unconstitutional. Well, I would have to go back because I've litigated several cases in the lower court, so I would have to go back to see what is the most relevant case. But litigants have challenged in general the law as limiting their rights on constitutional grounds. But I would have to go back in many cases to see where courts have specifically addressed the constitutional issues. Well, obviously, we want the highest court opinion that you have. I'm sure I can find it in the trial courts. I just want to make sure that I would have to review the intermediate court of appeals. There's no Supreme Court of Puerto Rico decision on the matter. Okay. Good morning. My name is Susan Seabrook. I'm also here to represent the Secretary of the Treasury of the Commonwealth of Puerto Rico. May it please the Court, I would like to reserve four minutes of my time for rebuttal. You may have it. Thank you. Your Honors, I'd like to just clarify a couple of points. One is that my understanding of the extension statute is that the granting of an extension is automatic among the filing of the extension request. To when? Three months. So that would be until August 15, 2016. And in the meantime, your clients are expecting the July estimated tax payment? Or isn't it true that there's an estimated tax payment due before August? I believe that's correct. There was an estimated tax payment due May 15 as well. And that has not been paid? Not to my knowledge. Walmart may be able to clarify that, but not to my knowledge. But the injunction is operative at this point, isn't it? That wouldn't affect that, your Honor. Estimated tax payments are due quarterly on estimated income tax. The nature of the A and T is a parallel tax computation. So an amount of tax, it's more of an amount would be due regardless of how it's calculated. Okay. The record reflects that with respect to the past two taxable years, and I think this is generally Walmart Puerto Rico's practice, they do file an extension and then actually file their return the following August 15. It is also their practice to take their overpayments of estimated tax and apply those immediately to the estimated tax due for the following tax year. So the returns that are in the record do reflect payment of the alternative minimum tax under the prior provision of this statute, which contained not the graduated rate schedule, but the same provisions and substance that we're talking about today. That tax was calculated under the A and T by Walmart Puerto Rico. That tax was paid. The excess overpayment of that tax was immediately applied to the following year's tax liability. So in terms of the availability of refunds... Overpayment on the assumption that the tax is unconstitutional? This is for prior years, Your Honor. So it's an overpayment of estimated taxes based on Walmart Puerto Rico's calculation of the A and T at that time. Okay. And those exhibits are in Volume 404 of the appendix. And through those exhibits, you can trace by line item the calculation of the A and T and the payment of the A and T and the carryover. Let's get to your argument that this is not unconstitutional.  Thank you, Your Honor. Essentially, the A and T has been part of Puerto Rico tax code for many years. This new formulation of the A and T was designed to retain and capture the taxable income base in Puerto Rico related to multinational, multijurisdictional taxpayers whose businesses span more than one country. The provision itself was designed to equalize related party transactions so that a fair amount of minimum tax is captured each year. And in this way, the statute itself does not affect interstate commerce as it applies to all taxpayers in this particular position. Isn't it facially discriminatory? Sorry, don't we actually have one of these unusual cases where we've got a facially discriminatory tax and that it only applies to inter-corporate family transfers when they're cross-jurisdictional? It applies to all. Well, taking a step back, this is actually a component in the A and T calculation. And that is one of the facts that kind of trips us up when we're doing this analysis. It is not a transfer tax. It does not apply on a transfer-by-transfer basis. It is a part of the calculation of an alternative minimum tax. And so what happens under the formulation is if that transfer is intra-Puerto Rico, in other words, I have a related company or subsidiary that's also doing business in Puerto Rico, that transaction would be taxed on both ends. I would be purchasing inventory, for example, from my related affiliate. My affiliate would be selling the inventory. And both entities would be subject to Puerto Rico corporate income tax. And so in the related party instance, as is illustrated in our reply brief, as an example, you can look at the figures that are provided in terms of the property that Walmart inventory purchases from third-party versus the inventory it purchases from the related party. The related party shows minimum or no gross profit. The third-party purchases and sales represent the bulk of the profit that's seen. So in scenarios like that, there is a suggestion that a closer look is needed to make sure that the pricing is accurate. And that is what the AMT is designed to do. So in cases where both parties are in Puerto Rico, there's no need for this because the related party is fully taxable. I think you're talking about the justification, but I had a very narrow question, which is isn't it facially discriminatory whether or not it's justified? Your Honor, from the face of the statute, you cannot tell whether that statute will apply to any specific taxpayer in any particular tax year until the close of the tax year because it's an alternative calculation. But you can tell by looking at the statute that it will only potentially apply to cross-jurisdictional transactions, can't you? That is correct, Your Honor. Isn't that what we call facially discriminatory, whether or not it's justified? Your Honor, if it were to apply to the transactions specifically, I would agree with you. It does not apply to the transaction. It applies to the calculation of the tax. And in that way, it does not burden interstate transaction, and it does not benefit intrastate transaction. A number of other cases stand for the premise that a taxing jurisdiction can determine the method by which it taxes businesses doing business within its jurisdiction and that to make distinctions based on the structure of the business entity is perfectly acceptable. You've reserved four minutes. Thank you. Your Honors, may it please the Court. My name is Joe Greenstein. I represent the Appalee, Walmart, Puerto Rico. This is a relatively straightforward constitutional case. But unless this Court affirms the District Court's finding of jurisdiction, the playing on constitutionality of Act 72 is never going to be remedied. That's because waiting for the Commonwealth Courts to make a decision about constitutionality, Walmart, Puerto Rico is going to have to pay approximately $200 million more in illegal taxes to the government against just $70 million of income. And even assuming Walmart, Puerto Rico could stay in business during that period of time, and even assuming it could withstand those losses, because of the Commonwealth's insolvency, it would take decades for Walmart, Puerto Rico ever to recoup those improper tax payments. How do you know Walmart? How do you know Puerto Rico will be insolvent in the future? The record evidence is abundant and clear. In fact, that's not possible that they would go insolvent for 20 years. They couldn't function. There has to be some solution at some point. Well, the record evidence in the trial indicates that there's no end in sight to their insolvency. There have been various fixes proposed, such as the fix in Congress that's currently at issue, but that fix at Congress isn't going to provide some means. Right, but no end in sight, that doesn't really help us. We're told that in normal course it might take three or four years for your action in Puerto Rico courts to come to fruition, in which case you'd be holding a judgment. So we're looking at least three or four years out. How do we find that three or four years from now, at that point, when you have your judgment in hand, that Puerto Rico will be insolvent? Well, I think you can only go on what's in the record today, and the record today shows insolvency. And in that regard, I'd direct your attention to the Supreme Court's decision in Stewart-Drygoods and the Ninth Circuit's decision in Adams County. Yes, but normally when courts make findings of fact, it's based on historic data about events that have happened. Here we have a prediction by a judge, a well-founded prediction, but nonetheless predictive evidence as to what will be true in three or four years at a time of great instability and uncertainty as to what rules are in fact going to apply to Puerto Rico. And that kind of adds to their argument that it's premature for the federal court to get involved and that the state is entitled, in the end, to make some decisions, if it doesn't have enough money to pay for all court judgments, to make decisions as to which get priority. And that there's nothing about Walmart which says it should get priority over pensioners or police officers or others who are going to be looking to the Commonwealth for money. I've got two responses to that, Your Honor. First, Your Honor, yourself used the term uncertainty. There is uncertainty here, and uncertainty is actually the standard that proves a lack of a plain, speedy, and efficient remedy. The Supreme Court explained in Roswell that the word plain means a lack of uncertainty. So the fact that there is an uncertain remedy, we don't know what Puerto Rico is going to look like in 20 years, but we know it's insolvent now, adds to our argument that there's no plain, speedy, and efficient. Secondly, however, I would go back to the Adams County and to the Stewart Dry Goods case. In Stewart Dry Goods, jurisdiction was found there because Kentucky was found to be insolvent and couldn't honor warrants. That was back in the Great Depression. Of course, Kentucky is not insolvent now, and Kentucky eventually emerged from its insolvency. But the Supreme Court's rule there was not, well, we predict World War II is going to break out and the economy is going to get better, and Kentucky will emerge from its difficult times,  Instead, the courts, in that case and in Adams County, look to the current financial state of the taxing authority, because that's the best you can do. In the current financial state of Puerto Rico, sadly, there's no possible way it could weather the potential refund that Walmart Puerto Rico is going to be due. So I would say that the remedy, in fact, is quite uncertain, and that adds to our jurisdictional argument. It doesn't detract from it. Going to the Secretary's main argument on appeal, which seems to have become a standing argument, the Secretary posits that because Walmart Puerto Rico has not yet filed an income tax return, therefore Walmart Puerto Rico doesn't have standing to appeal before here. And as the Secretary seems to do, the Secretary treats a tax return like some magic wand that transforms our tax liability from the theoretical to the concrete. But the fact of the matter is, is our liability is already concrete. It is already real. If you hadn't made that estimated tax payment, would you have standing? Absolutely, Your Honor, for two reasons. Reason number one, we put on stand unrebutted testimony, extensive financial data, extensive testimony from our witnesses that we have, in fact, incurred the tax. That in the last fiscal year we made $700 million of purchases from Walmart stores, that if you add the tax rate to these purchases we've already made, we've already incurred the tax. So even without having paid the estimated tax, the evidence in the record is that the tax has been incurred. You're missing one element in the formula, though. You're also missing what your tax would be, but for the AMT, you're right. Well, we've also put into the record evidence showing where our sales and profits, where our regular income tax liability was. The evidence in the record, which again was unrebutted, unresponded to by the Secretary, was that our normal tax liability, income tax alone, was $16 million in the last fiscal year. The AMT added $30 million to that tax liability. So we know what the figures are. The Secretary had a full and fair opportunity to discover those figures and to cross-examine on them. There really is no reasonable debate that we owe this tax. Quite apart from that, Your Honor, though, we are talking about injunctive relief, and we are talking about the ability to come into a court and say, protect Walmart Puerto Rico from imminent harm. And again, I don't think there's any reasonable debate on this record that we are going to be subject to this AMT. I mean, if you take the Secretary's... Yeah, but you know, there is a very strong policy reason for the federal courts to stay out of local tax collection. Nationally, it's expressed in the Tax Injunction Act, and this court has made that rule applicable to the Butler Act. The Butler Act itself doesn't have any exceptions to federal court non-interference, but nobody has suggested that our prior case law is wrong. And it seems odd in this period of great uncertainty about Puerto Rico's future ability to pay, whether you have standing or not, for the federal court to intervene at this point in Puerto Rico's history. So I'm trying to think about the policy reasons that led Congress and this court to adopt that rule of non-interference. Two responses to that, Your Honor. There is absolutely a strong rule of non-interference. We wholeheartedly agree with that. There are exceptions to that rule, however, and an exception to that rule is when you're faced with a confiscatory tax that will drive you out of business and for which you have no reasonable hope of a refund any time in the future. Yeah, of course it would be terrible for Puerto Rico if you were driven out of business. And that was actually my second point, Your Honor. Puerto Rico can complain about the impact of losing its tax dollars to the Puerto Rican economy, but what about the impact of losing Walmart Puerto Rico to Puerto Rico? Walmart Puerto Rico employs close to 15,000 people. It pays a minimum wage of $10 an hour, which is $2.75 more than the Puerto Rican minimum wage. It is the largest single contributor of sales taxes to the Puerto Rican economy. And the only valid testimony in trial from Anthony Walker, Vice President of Walmart Stores, is that it is untenable for Walmart Puerto Rico to continue to operate in the face of this tax, in the face of a tax which causes Walmart Puerto Rico to have to pay out more than a dollar of taxes, in fact multiples of dollars of taxes, for every dollar it earns. So while I am very sympathetic to Puerto Rico's concerns about its tax revenues and its tax dollars, we also have to be sympathetic to Walmart Puerto Rico here. Because eliminating Walmart Puerto Rico from the island, which is what Act 72 threatens to do, could have a vastly greater impact upon the Puerto Rican citizenry than the invalidation of this particular act. So I think putting that all together, we see the context in which what Judge Fuste did below was appropriate and proper. I should also, I think, dwell a little bit about the confiscatory tax issue. This court, in footnote 5 of its Pleasures of St. Patricio case, noted that there is an exception to the Tax Injunction Act and Butler Act jurisdiction that other courts have recognized with respect to taxes that are deemed exorbitant. It cites the Fifth Circuit's opinion in Denton, which we cite extensively in our brief. And per that exception, if the size of a tax is so extraordinary that a taxpayer cannot reasonably be expected to pay that sort of a tax in order to go through with a challenge, then it's appropriate for federal court jurisdiction. And of course, the evidence here, again, is unrebutted. The evidence here is that in the 4.6 years in which it's going to take to challenge this tax, our tax rate, our effective tax rate, is going to be between 300 and 400 percent of our profits. And so under any standard, that is an exorbitant tax. And for that reason, under the Fifth Circuit's decision in Denton, which was cited at least approvingly by this court in Pleasures of St. Patricio, there is an exorbitant tax exception. Can we go back? No, the Fifth Circuit says there is an exorbitant tax exception. That's not what the statute says. Can you put your arguments in terms of the traditional language of the exception to the Anti-Injunction Act? The exception is a plain speed and efficient remedy. Okay, is it plain? I don't believe it's plain because there's an uncertainty about whether or not a taxpayer, in this case of the Fifth Circuit, Denton, in the case of, in this case, Wal-Mart, Puerto Rico, would be able to sustain a challenge long enough to see through the remedy. So our position is it's not a plain remedy because the size of the tax is so gross, we will be driven out of business. It would quite possibly be driven out of business by the time of the end of the Commonwealth Court practice. So I'd say that it's not plain. There's something to speed there as well. The Supreme Court doesn't seem to be overly concerned about the amount of time it takes to process a tax refund through a state or other entity. In the Roswell case, the only real case I think that it's determined and talked about speediness, it found two years to obtain a refund from Cook County was speedy enough. Right. Here we're talking about 30, 40, 50, 60, 70 years to obtain a full refund from Puerto Rico if at the end of this 4.6-year process we're owing a tax refund of $200 million. And I'm comfortable arguing that whatever the Supreme Court said about two years of being speedy enough in Roswell, it wouldn't endorse 30, 40, 50, 60 years, the time it would take to get a remedy here. Isn't the comparator 4.6 years, not 50, 60, 70 years? Roswell was not concerned about collection of a judgment. It was concerned more about the procedures that the state used. In the Roswell case, there was no question that Cook County could fund $4,000 to the disaffected taxpayer in Roswell. I mean, that was not even an issue. In fact, the Supreme Court said at the end of this two-year process, this taxpayer will get the $4,000. Here, at the end of the 4.6-year process, there's absolutely no reason to believe Puerto Rico is going to be able to pay back to Walmart $200 million. In fact, to the contrary, all the record evidence says it won't be able to. It seems odd. In the normal course of litigation, we're concerned about the process that's afforded to the litigant, not necessarily assurances that you'll be able to collect on a judgment once you obtain it. Well, Your Honor, what good is a process if there's not an ability to enforce that process? How is that different from any other collection effort? People oftentimes aren't able to collect once they have a judgment. The point is that we have to be afforded a remedy that will effectuate our exception to the TIA. It's found in the Due Process Clause. And what we're saying is that the appropriate remedy would be an injunctive remedy. But we can't get that at the Puerto Rico courts. We can't go to Puerto Rico and get an injunction to stop this tax and stop the bleeding out of Walmart, Puerto Rico's coffers. And that's because of that special Puerto Rico statute that is the equivalent to the Butler Act. That's correct. There's also Puerto Rican Supreme Court President, Kamala DeMarco, which also says no injunctions to stop a tax. And so the question is, can we get an effective remedy? The notion is we can have a trial in Puerto Rico. We don't dispute that. We can't have an appeal in Puerto Rico. We don't dispute that. But what good are either of those trial procedures or appeal procedures if, at the end of the day, there's no way for us to get our money back? Do you have a view on whether the Puerto Rican Supreme Court could say this $3 million a year limitation is unconstitutional in the tax context? If, for example, the case were to go through the full administrative procedures and then make its way up to the Puerto Rican Supreme Court and that court rules in your favor, is it a separate litigation? Is there some law out there on whether they could upset the $3 million limitation? Quite honestly, I don't see how the Puerto Rico Supreme Court could upset that $3 million limit. The fact of the matter is the commonwealth courts are capable of adjudicating federal claims, including constitutional claims. My point is actually a practical one, Your Honor, which is let's say the commonwealth Supreme Court did declare that the $3 million limit was unconstitutional and Walmart Puerto Rico needs to get paid now. There's no money to pay it. The commonwealth Supreme Court can't squeeze blood from stone. And there is not $200 million sitting around in Puerto Rico's commonwealth coffers to pay us a tax refund. They have to shut down the schools. They have to stop providing police services, so on and so forth. So even if the Puerto Rico Supreme Court could overrule that $3 million limit, it would be an ineffectual act because as the state of the record stands right now, they don't have $200 million to pay us back. So once again, it all comes down to collectability. A lot of it comes down to collectability, although I think an independent basis for jurisdiction in this case is indeed the fact that it's an exception. I mean, when Fifth Circuit in Denton talks about that sort of an exception, when this court at least mentioned it in the Pleasures of San Patricio case, it was mentioned sort of independently of a collectability issue. So either way we get to jurisdiction, Your Honor, in either of those two ways. I think they're mutually reinforcing. I think one helps the other. But at the end of the day – I'm just having trouble. I mean, clearly there's a parallel procedure available to you in the U.S. Supreme Court who could also declare it unconstitutional. If they agreed with you, it all comes down to collectability. I think a lot of it comes down to collectability, Your Honor, and that's Supreme Court policy. But the other way of phrasing that is forcing you to continue to fund the Commonwealth while these issues are being worked out. Whether the injunction act was actually meant to perform that function. That's right, Your Honor. Although the other issue is this tax is so high that there's no reasonable basis to believe we can stay in business until we start the collectability, the collection process. I mean, we're going to be paying this fiscal year an effective tax rate of 400 percent. 400 percent because of Act 72. It means for every dollar in profit we earn, we have to pay the Commonwealth $4. So there's no way that that is a tenable position. There's no way that any business can be expected to stick around for five years under those circumstances in order to effectuate a constitutional challenge. And that's why a federal court remedy with an injunction to stop this tax is the appropriate way to go here. That's why we need relief in addition to the fact that even if we could weather that storm, at the end of the storm, there would be no port in sight. There would be no way to collect that $200 million. So the two are mutually reinforcing. And I don't want to suggest that it's just a collectability issue. It is also an issue about the confiscatory nature of the tax. And those two reinforce each other. I see that my time has expired unless there's any further questions, Your Honor. If you would just take one minute to address whether the act is facially discriminatory because I believe we heard an argument that it actually on a technical level applies in a way that somehow isn't facially discriminatory. I'm afraid I just don't see that, Your Honor. I mean, the tax expressly states that it only applies to a transaction that's between a corporate parent and an affiliate. It doesn't use those exact terms, but essentially where the corporate parent in that transaction isn't subject to Puerto Rico income tax. That was a round way of saying an interstate transaction. There's no other way for that to come to be other than an interstate or intercommonwealth transaction. For what it's worth, Professor Pomp, a noted and distinguished professor of tax policy, tax law at the University of Connecticut, said that this was the most facially discriminatory tax he'd seen in 40 years of teaching. And the district court credited that assertion. I mean, this is a tax that absolutely only applies if there is interstate commerce. Thank you. Thank you. Your Honors, first I'd like to stress that all of this is hypothetical at this point. Even if this statute remains struck down, even if Walmart does not, does not compute its income tax consistent with the statute, it does not mean that Walmart is entitled to a refund of epitome. It just means that its income tax will not be computed in accordance with this AMT statute. The Adams County and Stewart Dry Goods... Don't we have factual findings, though, that if during the most recent period of time their tax was a lot higher because of the AMT? For the past two years and this most recent projection are comparable. So for the past three years, Walmart Puerto Rico's tax has been relatively consistent. And so why would it be speculative that it would not be paying what the factual findings of the district court indicate? The factual findings concerning projections? Yes. Because the tax return at issue has not been filed. Once the return is filed, the secretary has the ability to audit the return. But you didn't put on, you know, we had projections and Puerto Rico really didn't oppose any of those fact findings. Well, we have no evidence with which to oppose projections that are based on... Of course you do. Of course you do. The Commonwealth has put itself in a difficult position before the First Circuit by essentially not challenging a single one of the factual findings made by the district court here. If they have evidence that can get to projections accepted by the district court about what this tax burden is, you also had access to that. You have instead chosen to ignore the facts and simply rely on the fact that it's hypothetical. Your Honor, I appreciate your comment. In terms of it being hypothetical, my point is only that projections are not a tax return. And projections cannot be immediately translated to a tax return and examined for their veracity in terms of computing an income tax. That was my only point in saying that. In terms of projections for future years, in turning those projections hypothetical, my point was that anything can happen during the course of a tax year and an income tax is based on an annual 12-month period. But that's... We're dealing with injunctions here, okay? And always in an injunction situation, you're projecting into the future and we use a probability test. And we weigh that against the probability of harm, the magnitude of the harm. And we have factual findings here that it is highly probable, although as you point out, still not known or certain, that there will be this very large tax liability. Why, sitting in equity, would we not defer to that factual finding of probability, notwithstanding its lack of certainty? Your Honor, in terms of the size of the tax liability, the question is how it's characterized. And in terms of the commonwealth's characterization, this is not an exorbitant tax liability. This is a proper tax liability based on the last several years. And there is nothing that this new statute does that is ramping up in any way the tax liability. But the legislative record tells us that was precisely the intent of this whole statute was to significantly ramp up the revenues. And the revenues come from only one source sitting behind you. Your Honor, frankly, that's not the only source of the revenues. And I would like to just take one second to distinguish Adams County and Stewart Dry Goods. Those were cases where the taxes had been paid already and determined that the taxpayers were owed those amounts. In this case, that has not been determined. And as far as the length of time it would take or the ultimate amount of any refund, that has yet to be determined. And so in terms of future examination of returns and assessment of tax, our position is the Secretary is not bound by projections whether or not they are used by the court to determine whether or not an injunction is appropriate. Our position is, consistent withstanding, that this taxpayer has not proved that that is, in fact, what will happen for 2016 and will not be able to prove that until the tax return is actually filed. The Secretary has the opportunity to review the return and determine if the practices that the AMT is meant to automatically correct or remediate to some extent are not, in fact, in that return, resulting in the same or even perhaps higher liability. So if we adopted your position as I understand it, then as a practical matter it would mean that even if everything Wal-Mart says on the merits and the unconstitutionality and the Anti-Injunction Act and everything were correct, they would not have standing to say any of that until another three or four years go by and the full audit process is completed under your position? Under my position, once they file, there's a process that needs to be followed. They would need to, the tax year itself would need to close so that the books and records were complete. That happened January 31, 2016. Once that happens, they would have to take their books and records and calculate their income tax liability, file their income tax return, and pay, if they owed any additional income tax, the additional tax liability. At that point, they have the opportunity to protest that tax liability. If they go forward with that protest and they're unhappy with the length of time, there would be nothing stopping them from going to the district court just as they went initially to the district court. The fact that the Commonwealth and the Secretary would oppose such a move on the basis of the bubble act, the Anti-Injunction Act, and principles of comedy, does not mean that their chances there would be materially different. At what point under your analysis, at what point does standing ripen? Like, a month, August? When the return is filed and they've established that they've actually paid the tax and suffered the purported harm. Are you saying August, or are you saying at the end of the audit? I'm saying I believe they would have standing in August and that would not prevent the Secretary from auditing, from taking a different position, auditing the return and determining that the amount of tax due was equal to or greater than that computed under the statute. You would concede that they had standing in August? No, I would, to clarify, I would concede that a taxpayer has standing to challenge a tax, an income tax. And you would say they should have waited to file the suit until August, but you still have all of your Butler Act defenses at that point? Yes, to clarify, I would say in August they should have notified the Secretary that they intended to challenge the tax and they should have followed the administrative process that all taxpayers are required to follow under Puerto Rico law. My point is only that there was no less ability to, in our view, inappropriately access the federal district court at that time than when they did, and they presented it as a binary choice of either rush to the federal district court or incorrect awareness tax liability that won't be paid for 60 years, or whatever the estimate is. So now I'm confused. I thought you said they would have standing in August. So let me ask again. Under your analysis of standing and how the standing principles work, when on the calendar, is it August or if it's not August, when is it when they have standing? I'm sorry, I'm still confused. It's not a calendar date that I'm referring to for standing under the Section 1983 action they brought. It is the filing of the tax return and the payment of the tax. So will they have standing in August under your analysis? Under my analysis, they will have standing to allege harm, but the case should not be taken in by the district court as a result of the Butler Act, the anti-injunction. But standing occurs when they file their tax return. Yes, when they actually suffer the harm of the tax. With that in mind, the court will expect regular reports from counsel on the status of the filing of any return. I don't know if they're going to ask for an extension beyond August. I don't know how long it will take this court to resolve this matter. But we appreciate the clarification of your argument. As I understand it, your first argument is there's no standing, this is premature. Your second argument is at the point that they get standing, you still have all of your Butler Act defenses. Correct, Your Honor. Okay. Can I just pin this out? Because I'm not sure that it's clear to me. Are you saying that when you refer to standing, are you saying that at the point where, in your opinion, the tax has been calculated and they suffered a harm, are you conceding that they would have standing at that point to come to federal court? Or are you just saying that's where the harm accrues, which allows them to proceed through the commonwealth procedure? Thank you, Your Honor. If you're conceding standing to be in federal court at all. Thank you, Your Honor. I'm referring back to the full payment line of tax cases that go back to 1960 in the Supreme Court as to what a taxpayer must do before having standing, before the claim is actually right. And that is an overarching standing issue that would apply to federal district court or the commonwealth court. My position is that in order to have standing anywhere, for a full payment and the tax administrative law must be adhered to, and you can't take a situation where you're taking the timeline back to even before the payment of the tax to the tax return hasn't even been filed yet. So in terms of standing, I would say that if the federal district court were to entertain a case, it would be once the taxpayer has standing under applicable Supreme Court precedent. My position would be that in this case, the action should be dismissed because the proper route is for the taxpayer to file a claim for refund in the commonwealth court of first instance and pursue its remedies there. The issue of whether they would have standing to claim a Section 1983 case in harm, that has been done, but for the most part, those cases do not involve taxpayers. Those cases involve associations, trade associations, or groups of entities that are representing taxpayers such as Walmart. So the refund or the payment of tax is not the remedy that they're seeking from that court, whether it's injunctive or declaratory relief. And so this case would be, as far as I know, unique if it were to jump the applicable Puerto Rico law in pursuing its remedies and go straight to the federal district court. There is one case, I believe it's Duncan, where there was a little bit of back and forth where the federal district court declined to take jurisdiction ultimately, but provided something of, I guess, a collaborative role in the sense of making sure that the commonwealth court and the secretary moved forward with resolving the claim. But the district court did not ultimately take jurisdiction of that taxpayer's case. I'd like to follow up. They say they have standing because they have applied the tax to themselves and they have made estimated tax payments on that basis. Are you saying that is insufficient injury under a line of Supreme Court cases having to do with when taxpayers have standing? Yes, Your Honor. Okay. In your subsequent filing with this court, please identify exactly what cases, and then we will just identify the cases, no argument. Okay. And then we will give your brother an opportunity to reply to that in like terms. So can you get us this in, say, 10 days from now? Yes, Your Honor. And we'll give you a week thereafter. Yes, Your Honor. Is that enough time or am I making your life miserable? But it's enough time. All right. Could be both. Yes, well, sorry about that. Okay, thank you very much.